**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1582-20

WASHINGTON STREET
APARTMENTS,

     Plaintiff-Respondent,

v.

SHANA GOODMAN,

     Defendant-Appellant.

_____

Argued May 24, 2021 – Decided June 25, 2021

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Special Civil Part, Essex County, Docket No. LT-22712-19.

Felipe Chavana argued the cause for appellant (Essex-Newark Legal Services, attorneys; Sharie A. Robinson, Maria D. Castruita and Felipe Chavana, on the briefs).

Bruce E. Gudin argued the cause for respondent (Ehrlich, Petriello, Gudin, Plaza & Reed, PC, attorneys; Bruce E. Gudin and Erin Enhlich Caro, on the brief).

PER CURIAM

On March 19, 2020, as the State braced for the full effect of the anticipated COVID-19 pandemic, Governor Philip D. Murphy issued Executive Order 106 (EO 106) which stayed the "enforcement of all judgments for possession, warrants of removal, and writs of possession . . . unless the court determines on its own motion or motion of the parties that enforcement is necessary in the interest of justice." Exec. Order No. 106 (Mar. 19, 2020), 52 N.J.R. 553(a) (Apr. 6, 2020) (emphasis added). Chief Justice Rabner issued the Court's second Omnibus Order on March 27; it cited EO 106 and specifically suspended "lockouts of residential tenants (evictions)." Sup. Ct. of N.J., Second COVID-19 Omnibus Order (Mar. 27, 2020).

In July, Judge Glenn A. Grant, Acting Director of the Administrative Office of the Courts (AOC), issued Directive #20-20 (the Directive), which was intended to "implement[] a multifaceted plan for improving the handling of Landlord/Tenant (LT) cases from the outset, including by providing litigants with information and resources." Administrative Directive #20-20, "Special Civil Part – Landlord/Tenant Matters during COVID-19" (July 28, 2020). The Directive specifically noted that the Court's July 14, 2020 Seventh Omnibus Order "amended LT processes during COVID-19 by allowing plaintiffs/landlords to seek an LT trial based on emergent circumstances," and permitting a court to "order an eviction in the 'interests of justice.'" The

2 A-1582-20

Directive noted that non-payment of rent would not justify a trial unless the tenant had died, but it provided a non-exhaustive list of "grounds" that "**may** constitute emergent circumstances justifying an LT trial." One such ground was N.J.S.A. 2A:18-61.1(b), which permits the eviction of a residential tenant if "[t]he person has continued to be, after written notice to cease, so disorderly as to destroy the peace and quiet of the occupants or other tenants living in said house or neighborhood." The Directive advised judges to "take into consideration the circumstances of each case in determining whether a trial is warranted," and it included a sample Order to Show Cause form that courts should use when deciding to conduct an LT trial based on emergent circumstances.

Defendant Shana Goodman is a tenant in a multi-family, federally subsidized residential property owned by plaintiff Washington Street Apartment. The litigation that gave rise to this appeal commenced well in advance of the issuance of EO 106, the Court's Omnibus Orders, and the Directive. In September 2019, the parties appeared in court on plaintiff's eviction complaint alleging defendant violated her lease by allowing her dog to bark "at various times throughout the day and night, every day of the week . . . disturbing the peace and quiet of other occupants." Unable to mediate the dispute, plaintiff asked for and received an adjournment to secure the presence

3

of its witnesses, but defendant failed to appear on the new trial date, September 26, 2019. The court issued a judgment for possession and a warrant of removal issued thereafter.

Defendant filed an order to show cause, and the parties appeared in court again on October 16, 2019. They negotiated a stipulation of settlement in which defendant agreed to the issuance of a warrant for removal if she were in default or in breach of the stipulation, a specific condition of which was that defendant "prevent excessive barking from service animal, with all but incidental barking not recurring after 7:00 [p.m.] Mon[day] — Sun[day]."

In February 2020, plaintiff moved for the issuance and execution of a warrant of removal based on defendant's breach of the stipulation. The motion was supported by the certification of a tenant who claimed defendant's dog had barked incessantly throughout the weekend, thereby disturbing her peaceful enjoyment of her apartment. Defendant did not respond to the motion, and the judge issued another warrant for removal on February 28, 2020. Plaintiff was unable to execute the warrant prior to the issuance of EO 106, and defendant remained in the premises with her dog.

In November 2020, plaintiff filed a motion seeking a warrant for removal pursuant to the "interests of justice" standard in EO 106 and the Directive. The motion was supported by a certification from a neighboring tenant, Karim

4

Sharif, that said defendant's dog barked incessantly "at all hours of the day and night" disturbing his peaceful enjoyment of the premises. On December 30, 2020, the judge issued an order to show cause on plaintiff's application for a warrant of removal returnable January 13, 2021.[1] Pursuant to the terms of the order, plaintiff personally served it on defendant.

Defendant failed to appear. The judge considered the testimony of Sharif. He lived on the same floor as defendant on the other side of the elevator bank. Defendant's dog was left alone in the apartment and constantly barked from 7 p.m. to "as early as 6 a.m." Sharif estimated this occurred six days a week. He spoke with defendant "on several occasions" about the barking, which caused him to spend most of his time in his bedroom, not his living room, but "she just doesn't care." Sharif said that defendant would knock on his door when she was "intoxicated" and admit the dog barked whenever she was not in the apartment. But, defendant claimed, "I have no control over it. It's out of my control."

---

[1] The order modified the form order attached to the Directive, which, as noted already, was intended to apply to an application by a landlord to conduct an "LT trial," and for the court to use in scheduling such trial. The preliminary language in the form order was therefore inapplicable to the facts of this case. Most importantly, like the form order, the order entered by the judge in this case contained all the salient provisions of the form order, including that it be personally served upon defendant.

In response to the judge's questioning, Sharif acknowledged making complaints to the building manager in the past, and that he had stayed in the apartment for many months after first complaining about the barking. He explained that he "love[d]" his apartment, did not want to move, "[a]nd . . . would complain for another year if that's what it took for [him] to come before a [j]udge to express what [he has] been going through for the last year and a half." The judge asked Sharif when he last complained to defendant about the dog; Sharif said it occurred "about two weeks ago." Then, defendant knocked on his door, told him she was going out and had no control over the dog's barking. Defendant unleashed a string of expletives and told Sharif "[s]he didn't have a concern in the world about [his] complaint, because nothing would be done."

After considering plaintiff's counsel's argument, the judge issued an oral decision. He found Sharif to be a "very credible witness" and defendant's dog barked "every time the dog is left alone." The judge recounted the prior history of the litigation and the terms of the stipulation. He noted, "This is a building where there are multi-tenants and the [c]ourt has to ensure that the other tenants can live in the building." The judge found defendant violated the stipulation and that a judgment for possession should issue "in the interest of justice." He noted Sharif "ha[d] been putting up with this for over a year . . . [and defendant] was

6

notified about the situation, and she hasn't taken any steps to fix the situation." The judge entered the January 13, 2021 order granting plaintiff's request for a warrant of removal to issue and be executed "in the interests of justice without delay."

Defendant apparently sought an order to show cause because the judge reconvened a virtual hearing on January 26.[2]  Defendant appeared pro se, and plaintiff's counsel appeared with the building manager, Tracy Carr.

Defendant explained the dog was a "service dog," which she took in when defendant's mother passed away two years earlier.  Defendant denied ever getting notice of plaintiff's December 2020 motion for an order to show cause, even though plaintiff filed a certification indicating defendant was personally served.  Defendant claimed any barking was from another dog on her floor.  She was with her dog "24/7," and the dog accompanied her whenever she left the apartment.  Defendant testified the dog did not bark "too much."

During the hearing, the dog began to bark, and defendant explained the bark was "low" and only occurred because defendant was "at the door."  She stated that the dog "barks when she hears people in the hallway . . . the elevator, somebody making a lot of noise or [if] we come in the door . . . ."  Defendant

---

[2]  The appellate record does not include any pleading that resulted in the January 26, 2021 hearing.

claimed Sharif was "lying" about the frequency of the dog's barking. The judge asked why the dog was still barking, and defendant explained, "Because I left out and she wanted to come with me."

Carr was placed under oath and testified that she had received several complaints about the dog from tenants in the building. Plaintiff had not accepted any rent from defendant for more than one year while the action was pending. Carr said she had spoken with defendant about the problem in March 2020, something defendant acknowledged.

Defendant then brought an unidentified fellow tenant into the proceeding, who said she heard the dog barking at night; another unidentified tenant said she had been sleeping and the dog's barking did not bother her.

The judge concluded that defendant had violated the stipulation. He found that defendant essentially admitted being unable to keep the dog from barking, which was consistent with Sharif's claim that defendant told him there was nothing she could do about the problem. The judge explained that although defendant thought the dog's barking was not a problem, "the dog does bother people." He entered an order staying execution of the warrant of removal previously entered until February 26, 2021. Defendant filed an emergent application for a stay pending appeal, which we granted, and we accelerated the appeal.

8

Our standard of review following a bench trial is well-known.

> Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]"
>
> [Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011) (alteration in original) (quoting In re Trust Created By Agreement Dated December 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)).]

In reviewing the judge's findings, "[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). However, we owe no deference to the judge's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

Before us, defendant contends her due process rights were violated because the proceedings "did not satisfy the special interests of justice exception" in EO 106, the Court's Omnibus Order and the Directive. As we understand the argument, defendant contends the judge failed to explain why

9

"this case of a six-pound barking dog" satisfied the exception, or that plaintiff satisfied the notice requirements of the Directive's form order. She notes plaintiff's counsel was surprised that the hearing took place on January 13, 2021, having received a "postcard" that there would not be oral argument.

Although the judge did not take note of defendant's absence prior to the start of the January 13, 2021, he had before him plaintiff's certification that defendant had been personally served with the Order to Show Cause as required by the Directive. He also knew that defendant had failed to respond. Plaintiff's counsel's stray remark about a postcard is otherwise undeveloped by the record, but the fact remains that the judge conducted the hearing after plaintiff demonstrated compliance with the Directive, including express notification of the significant potentially adverse consequences of the proceeding for defendant.

The judge's factual findings following Sharif's testimony were extensive and his oral decision, when fairly read in its entirety, reflects his understanding of the terms of EO 106, the Court's Omnibus Orders, and the Directive. But judges are required to do more.

Rule 1:7-4(a) requires judges to provide not only factual findings, but also to "state [their] conclusions of law thereon." "Naked conclusions do not satisfy the purpose of R. 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980). Here, at

10

the first hearing, the judge said little more than that the facts satisfied the interests of justice exception to the moratorium.  He failed to explain why, and we could remand the matter for the judge to provide a more fulsome explanation. See, e.g., Slutsky v. Slutsky, 451 N.J. Super. 332, 358 (App. Div. 2017) (remanding for findings and analysis).

However, we believe that is unnecessary because it is apparent that the judge implicitly recognized what might constitute an emergency situation justifying relief from the moratorium.  The Directive itself used a violation of the peaceable enjoyment of the premises by other tenants as an example. Moreover, the judge was completely familiar with the procedural history of the matter, which commenced more than fifteen months earlier and resulted in a stipulated settlement that defendant allegedly violated on the same grounds that supported the original complaint and judgment for possession.

Defendant also argues that the judge should "have afforded her a de novo hearing" by vacating the judgment for possession entered after the January 13, 2021 hearing and providing her with the opportunity to cross-examine Sharif. The failure to do so, defendant claims, violated her due process rights.  See, e.g., In re Request to Modify Prison Sentences, 242 N.J. 357, 369 (2020) ("At a minimum, due process requires notice and an opportunity to be heard." (quoting

Doe v. Poritz, 142 N.J. 1, 106 (1995))). The contention is premised on the claim that defendant "established that she had lacked notice of the earlier proceeding."

Certainly, the judge made no such finding and, it is fair to say that the judge found most of defendant's testimony lacked credibility. Additionally, the judge had plaintiff's certification of personal service on defendant. In response to the judge's inquiry about being served on December 30, 2020, and whether she was home to receive the motion papers, defendant said, "I can't really remember that[,] but I know I didn't receive any court papers. . . . I would have addressed the matter, like . . . when I got this [warrant for removal] on my door." However, the procedural history we set forth in detail belies defendant's assertion that she always responded to notices of court proceedings.

Moreover, the judge considered defendant's testimony which, strictly speaking, did not refute Sharif's. Defendant acknowledged the dog barked when she was not in the apartment, when people were in the hallways, when the elevators ran, or when she entered the apartment. Indeed, the dog began barking during the hearing and both unidentified neighbors who defendant solicited acknowledged the dog's barking. As the judge noted, defendant's belief that her dog did not create a disturbance reflected a "difference of opinion" from other tenants, notably, Sharif, who the judge found credible.

Lastly, defendant claims we should reverse because the judge failed to consider the hardship to her and her two children if she were to be evicted. That dilemma is, unfortunately, all too familiar to judges who preside over LT matters. However, the equities to be balanced in this case were intrinsic in the judge's obligation to decide whether plaintiff established relief from the moratorium was "in the interests of justice." The judge considered the effect of defendant's actions on other tenants in the building. We find no reason to reverse.

The stay we previously issued is vacated, and the matter is remanded to the trial court to re-issue the warrant of removal and permit its execution under terms the court deems appropriate.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1582-20